◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY JOHNSON, Appellant. [639 NYS2d 407] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldstein, J.), rendered November 12, 1992, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLARENCE JOHNSON, Appellant. [639 NYS2d 409] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldstein, J.), rendered November 12, 1992, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

Viewing the evidence in the light most favorable to the prosecution (*see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a

reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see, CPL 470.15 [5]).

The defendant was tried with his brother (see, People v Johnson, 224 AD2d 635 [decided herewith]) for the murder of Dr. Ester Lim, whose body was found in a grassy area of Starrett City on May 29, 1988. One of the prosecution witnesses, Robert McCarthy, a peace officer employed by Starrett City, testified that, around 10:00 P.M. on May 28, 1988, he saw two men at the location where the body was later found. One man was seated in a cream-colored Mercedes Benz with "MD" license plates, and the other man stood by the driver's side. McCarthy briefly spoke to the man standing outside the vehicle and identified him in court as the defendant. He could not identify the man who sat in the passenger seat. The vehicle, which was later found abandoned in Starrett City, belonged to the victim.

The defendant contends that the court erred in admitting evidence that McCarthy identified him in a photographic array in 1991 because it constituted improper bolstering. We conclude that, under the circumstances of this case, the court properly ruled that the cross-examination of McCarthy by counsel for the codefendant opened the door to this testimony. During cross-examination, counsel for the codefendant elicited testimony from McCarthy that he had been asked to look through books of photographs to see if he could identify anyone. The defendant's counsel objected, and the question was withdrawn. Subsequently, however, the codefendant's counsel asked McCarthy if he was shown photographs in June 1988 to see if he could recognize anyone. There was no objection to this question, and McCarthy responded that he did not recall. The codefendant's counsel then asked McCarthy whether he was shown photographs of five individuals, not including the defendant or the codefendant. McCarthy responded in the negative each time and stated "(n)obody ever gave me names on them". After this series of questions, the defense counsel objected. The court held a sidebar conference and ruled that the cross-examination had given the jury the impression that McCarthy had not identified anyone from photographs, when in fact he had identified the defendant, and thus the prosecutor would be permitted to elicit evidence of the prior identification. The codefendant's counsel then questioned McCarthy concerning his failure to identify the codefendant from a group of photographs in 1991. On redirect examination, the prosecutor elicited testimony that McCarthy had viewed hundreds of photographs at the precinct since 1988 and that, in 1991, he identified the defendant from a group of photographs.

Generally, evidence of an extrajudicial identification of a photograph of a defendant is inadmissible (*see, People v Caserta*, 19 NY2d 18). An exception is made, however, when the defendant opens the door to such testimony by creating the misleading impression that the victim was unable to identify the defendant prior to the trial (*see, e.g., People v Mahone*, 206 AD2d 263; *People v Giallombardo*, 128 AD2d 547; *see also, People v Melendez*, 55 NY2d 445, 451-452). Here, the codefendant's counsel, by eliciting testimony from McCarthy that he could not recall being shown any photographs in 1988, created the misleading impression that McCarthy did not identify anyone prior to the trial, when he had identified the defendant in 1991 (*see, e.g., People v Levy*, 123 AD2d 885 [testimony regarding the complainant's failure to identify the defendant's photograph on one date opened the door to evidence of his identification of the defendant's photograph on another date]). Although this testimony was elicited by the codefendant's counsel, the defendant's attorney made a strategic decision not to object until after the misleading testimony was before the jury. Under the circumstances, the court did not improvidently exercise its discretion in permitting redirect examination of McCarthy regarding his previous identification of the defendant.

In any event, even if we were to find that the court erred, such error was harmless (*see, People v Johnson*, 57 NY2d 969; *People v Mobley*, 56 NY2d 584). A prosecution witness testified that the defendant told him about a week after the murder that he had "knocked somebody off". He described the victim as a "Chinese lady" and a doctor. During this same conversation, the defendant held a Mercedes Benz key chain and stated that he observed the victim at a teller machine on Northern Boulevard in Great Neck. The defendant, in the presence of this witness, said to the codefendant "[y]ou didn't do anything anyway. You stayed in the car". On other occasions, the codefendant made statements implicating himself in this crime to a prosecution witness. Evidence was elicited from prosecution witnesses that the victim had accounts at banks located on Northern Boulevard in Great Neck, and ATM receipts indicated that the victim made two withdrawals from bank machines on Northern Boulevard in the evening of May 28, 1988. Thus, the proof of the defendant's guilt was overwhelming, and there was no significant probability that the jury would have acquitted him if the error had not occurred (*see, People v Johnson, supra*).

The defendant further claims that the court erred in deny-

ing his mid-trial motion for a severance because he was prejudiced by the admission of the codefendant's statements to a prosecution witness. However, the defendant's motion for a separate trial was not timely made, i.e., within 45 days after arraignment (*see,* CPL 255.10 [1] [g]; 255.20 [1], [3]), and the defense failed to demonstrate good cause for the delay (*see, People v Doby,* 178 AD2d 427). Moreover, the defendant's claim is unpreserved for appellate review (*see,* CPL 470.05 [2]). The arguments made on appeal were not raised in the trial court as grounds for severance, and the defendant never challenged the witness's testimony on the ground that the codefendant's statements implicated him (*see, People v Santiago,* 204 AD2d 497; *People v Drake,* 170 AD2d 457).

In any event, the defendant's claim that he was deprived of a fair trial by the admission of the witness's testimony is without merit. The Confrontation Clause bars the admission at a joint trial of a nontestifying codefendant's statements which serve to incriminate the defendant (*see, Bruton v United States,* 391 US 123; *People v Davis,* 156 AD2d 376). In the instant case, the statements made by the nontestifying codefendant to the witness did not implicate the defendant in any wrongdoing and thus did not deprive him of his Sixth Amendment right to confront the witnesses against him (*see, People v Paulino,* 187 AD2d 736; *People v Quinones,* 141 AD2d 569).

We have considered the defendant's remaining contentions and find them to be without merit (*see, People v Johnson,* 224 AD2d 635, *supra* [decided herewith]). O'Brien, J. P., Joy, Altman and Florio, JJ., concur.