*624 OPINION OF THE COURT
Troy K. Webber, J.
The novel question presented is whether, under certain circumstances, the court may de-sequester a jury so that the jurors may return home for the weekend where it is clear that the jury will not be able to deliberate. The court finds that under certain circumstances, with the proper safeguards, it may de-sequester a jury without consent of the defendants.
Procedural History
Defendants were charged by indictment, inter alia, with robbery in the first degree (Penal Law § 160.15 [4]), robbery in the second degree (Penal Law § 160.10 [1]) and robbery in the third degree (Penal Law § 160.05). Specifically, the defendants were charged with taking a 1999 Honda Del Sol and other property at gunpoint.
The trial of both defendants commenced on September 27, 2000. A jury was in place by October 11, 2000. During jury selection, the prospective jurors were informed that due to the nature of the charges, were the jury not to reach a unanimous verdict by a specific time in the evening, the jury would be sequestered at a hotel.
The People presented the first of their witnesses on October 11, 2000. Defendant Cabrerra presented an alibi witness on October 18, 2000. The testimony concluded on Wednesday, October 18, 2000. The jury was charged on that day as well and began their deliberations at approximately 4:00 p.m. Shortly after the reading of the charge, the jury requested a written copy of the charges and the applicable law. The court informed the jury that this was not permissible and at the jury’s request re-read the charges and the applicable law.
Sometime in the evening, deliberations were suspended and the jury was sent to dinner and to the hotel for the night. Deliberations resumed the following morning, Thursday, October 19, 2000, and continued through to the evening. Again, at some point in the evening, deliberations were suspended and the jury was sent to dinner and to the hotel for a second night. Deliberations resumed the following morning, Friday, October 20, 2000. During the deliberations on Wednesday as well as Thursday, the jurors sent four notes to the court. One note was from an individual juror. This note was illegible. The court requested that the juror send a clearer note. None was sent. Two additional notes were received by the court. Both *625 notes indicated that there was at least one juror who was not deliberating and who was not evaluating the evidence. One note indicated that the jury had reached an impasse. There was one note where the jurors requested read back of the testimony from two of the police officers involved. On October 19, 2000, the jury had also requested read back of the testimony of the alibi witness.
On Friday, October 20, 2000, counsel for defendant Cabrerra informed the court that due to the Jewish holiday of simehat torah he would be unavailable from sundown Friday evening until sundown Sunday evening. At this time, as well as the day before, the court made inquiry of the jury as to whether any of the jurors were Friday into Saturday Sabbath observers. None of the jurors responded in the affirmative.
At 2:15 p.m., on Friday, October 20, 2000, the jurors sent a note to the court stating that they were “hopelessly deadlocked.” This was the first such communication from the jury. As stated above, prior to this note the jury had indicated that they had reached an impasse. Following this note, the court gave the jury what is commonly called an Allen charge, reminding the jurors of their oath as well as their obligations and duties as jurors.[1] The jurors were directed to resume their deliberations. There were no further notes or requests from the jury.
Sometime in the early afternoon the court convened the attorneys and the defendants, out of the presence of the jury. The court questioned counsel for Cabrerra as to whether he would be able to appear on Saturday or Sunday in the event of a request for read back, a verdict or any other communication from the jury. He stated no. The court inquired as to whether his partner or another attorney in his office was available to appear on Saturday or Sunday in the event of read back, a verdict or some other communication from the jury. Again, the response was no. Finally, the court inquired as to whether the defendants would waive further sequestration. Both defendants declined to do so.[2]
Additionally, this court was informed by court officials that due to the baseball World Series between the New York Yankees and the New York Mets the hotels normally used for *626 sequestered juries were unavailable. As a consequence, the jurors would have to be transported to lodgings some distance from Bronx County. Thus, this court was faced with the prospect of declaring a mistrial, suspending deliberations for the weekend with the knowledge that the jury would be compelled to spend three nights and two days in a hotel with no possibility of deliberating or separating the jury for the weekend.
For the reasons discussed below, this court directed that the jury be de-sequestered for the intervening weekend. The jurors were informed that the court was prepared to de-sequester the jury for the weekend if it were satisfied that the jurors would abide by the court’s instructions. The court instructed the jurors that each individual juror would have to state in open court that they would abide by the instructions. Additionally, each juror was told that on Monday morning they would be individually polled or questioned as to whether they abided by the court’s instructions. The jurors were given the following instructions:
(1) Cease deliberations.
(2) Do not discuss the case among yourselves or with any friends or relatives.
(3) Do not visit the scene of the incident or any other locations mentioned during the trial.
(4) Do not read anything regarding the case in the newspaper, should anything appear in the newspaper.
(5) Do not listen to anything regarding the case on the radio or television.
(6) If anyone approaches you requesting any information regarding the case, report it to the court’s attention immediately.
The jurors were also instructed to bring their belongings on Monday morning in that sequestration would be continued if they were unable to reach a unanimous verdict. On Monday morning, each juror was individually questioned. Each assured the court that they had followed the court’s instructions. The jury was then allowed to resume their deliberations. They reached a unanimous verdict as to both defendants on Wednesday, October 24, 2000.
Conclusions of Law
CPL 310.10, as amended by chapter 83, § 209 of the Laws of 1995, provides in pertinent part as follows:
“1. Following the court’s charge, except as otherwise provided by subdivision two of this section, the jury must retire to delib *627 erate upon its verdict in a place outside the courtroom. It must be provided with suitable accommodations therefor and must, except as otherwise provided in subdivision two of this section, be continuously kept together under the supervision of a court officer or court officers. In the event such court officer or court officers are not available, the jury shall be under the supervision of an appropriate public servant or public servants. Except when so authorized by the court or when performing administerial duties with respect to the jurors, such court officers or public servants, as the case may be, may not speak to or communicate with them or permit any other person to do so.
“2. In any case other than one where the court’s charge includes a count alleging a crime which is a class A felony or a class B violent felony offense or class C violent felony offense as defined in section 70.02 of the penal law, at any time after the jury has been charged or commenced its deliberations, and after notice to the parties and affording such parties an opportunity to be heard on the record outside of the presence of the jury, the court may declare the deliberations to be in recess and may thereupon direct the jury to suspend, its deliberations and to separate for a reasonable period of time to be specified by the court, not to exceed twenty-four hours, except that in the case of a Saturday, Sunday or holiday, such separation may extend beyond such twenty-four hour period. Before each recess, the court must admonish the jury as provided in section 270.40 of this chapter and direct it not to resume its deliberations until all twelve jurors have reassembled in the designated place at the termination of the declared recess.”
This section recognizes the need to isolate deliberating jurors in order to guard against outside influence, depending upon the nature, seriousness and notoriety of the case. In certain cases, jurors must be separated from their friends, relatives and other members of the community in order to insure that these individuals will not attempt to influence the jurors and to insure that the jurors will not be distracted from their duties. Thus, this section was enacted and amended in order to preserve the integrity and sanctity of jury deliberations.
On its face, CPL 310.10 would seem to mandate sequestration in all cases where the defendant is charged with a class A felony or a class B violent felony or a class C violent felony offense, without exception. Courts, however, have carved out certain exceptions. For example, jurors may be separated for brief periods for religious observance (People v Fernandez, 81 NY2d 1023 [1993]; People v Lilly, 187 AD2d 674 [2d Dept 1992], *628 lv denied 81 NY2d 973 [1993]) and for a medical emergency (People v Colon, 211 AD2d 575 [1st Dept 1995], lv denied 85 NY2d 971 [1995]).
Although not stated in the statute, courts have held that under certain circumstances a defendant may waive sequestration. In People v Webb (78 NY2d 335 [1991]), the Court of Appeals found that in certain cases, where it was apparent that sequestration was not necessary, the court in its discretion could dispense with sequestration upon waiver by the defendant. (See also, People v Bello, 82 NY2d 862 [1993]; People v Lilly, 187 AD2d 674, supra; People v D’Alvia, 171 AD2d 96, 106 [2d Dept 1991], lv denied 78 NY2d 1075 [1991]; People v Marte-Nuesi, 166 Misc 2d 344 [Sup Ct, Kings County 1995], affd 248 AD2d 555 [2d Dept 1998], lv denied 92 NY2d 901 [1998]; People v Crichlow, NYLJ, Aug. 17, 2000, at 26, col 2.) These courts have reasoned that sequestration is purely statutory and does not implicate fundamental rights that are an integral part of the trial. The sequestration of a jury pursuant to CPL 310.10 being strictly a product of statute does not inhere in the guaranty of a trial by jury as contained in New York Constitution, article I, § 2. (People v Webb, supra; People v D’Alvia, 171 AD2d 96, supra.)
Similarly, Federal courts have also held that sequestration does not implicate fundamental rights to a fair trial. Under Federal law, the Trial Judge has the discretion to separate jurors during deliberation. (Powell v Spalding, 679 F2d 163 [9th Cir 1982]; United States v Persico, 832 F2d 705 [2d Cir 1987], cert denied 486 US 1022; United States v Breland, 376 F2d 721 [2d Cir 1967].)
This court recognizes that in the above State court cases the defendants either expressly or impliedly waived sequestration. In the instant case, both defendants declined to do so. While these cases are factually distinguishable, the reasoning employed by the above courts is applicable in this case as well. Paramount in all of these cases is whether the integrity of the deliberation process has been or will be compromised. Factors such as whether the case has been reported in the media, whether any of the defendant’s family members or friends have attempted to contact the jurors and whether there is the possibility of future contact were considered. The factors to be considered here are the same.
In making its determination, this court considered the integrity of the deliberation process as well as the possible prejudice to the defendants in separating the jury for the weekend.
*629 This court had no reason to assume that separation would have compromised the integrity of the deliberation process. There had not been any media coverage of this case. There was nothing to suggest that there would have been any future media coverage. Neither the defendants’ family members nor friends had attempted to contact any of the jurors. There was no reason to believe that there would have been any future contact. Thus, there was nothing to suggest to this court that separation would have compromised the deliberations. Indeed, it was this court’s belief that the integrity of the deliberations as well as the integrity of the judicial process would have been compromised by compelling the jurors to remain at a hotel for three nights, some distance from their homes and incommunicado from their friends and family members with the knowledge that they would not be allowed to deliberate.
This was not the situation where the jurors would have been able to deliberate for a couple of hours on Saturday or a couple of hours on Sunday. It was known on Friday afternoon that there would not be any deliberations conducted during the weekend. Had there been the possibility of some deliberations, this court would not have considered separation. However, to require that the jurors be held at a hotel in order to simply sit and do nothing would have been pointless and arbitrary and would have resulted in needless inconvenience to the jurors as well as possible undermining of the judicial process.
Separation, with the court’s admonitions and instructions, insured that the jurors would not feel pressured into coming to a unanimous verdict in order to avoid further sequestration as opposed to in order to fulfill their duties as jurors. A verdict based upon convenience and not the evidence would have severely undermined the judicial system. In this court’s opinion, there was a far greater possibility of compromising the integrity of deliberations by further sequestration than by separating the jurors for the weekend and resuming on Monday morning.
In making its ruling, this court also considered the fact that if the jury were sequestered for the weekend the court would have been required to give the jury certain admonitions and instructions. Admonitions and instructions almost identical to the ones required were actually given by the court when the jurors were allowed to separate for the weekend. The jurors would have been directed to cease deliberations. They would have been told that they were not to discuss the case among themselves. They would have been told not to read anything *630 concerning the case in the newspapers or watch or listen to anything regarding the case on televison or radio. Obviously, these admonitions are given with the belief that the jurors will follow them. This court sees no distinction in assuming that the jurors would abide by the admonitions at a hotel and not at their respective homes.
While the defendants argued that separation would be prejudicial to them, they failed to articulate what the resulting prejudice would be. In weighing the competing issues, this court found no prejudice in separation. And, in fact, the court was concerned that further sequestration would result in prejudice to the defendants. It was quite possible that the jurors would have felt pressured into making a hasty decision not based upon the evidence in the case but rather upon a desire to avoid separation from their family and loved ones for what was assured to be at least three additional nights.
Once the jury was informed that they would be sequestered over the weekend but would not be permitted to deliberate, they may well have come to a unanimous verdict in order to avoid further sequestration. The emotional and psychological effects of further separation from their family and friends may well have resulted in the destruction of impartiality and may well have prejudiced the defendants. Further sequestration may have undermined the very purpose of the procedure by discouraging the impartial review of the evidence in the case.[3]
Finally, this court also considered the waste of energy, time and resources if there was the declaration of a mistrial. While it was not a motivating factor, it was a consideration. The trial lasted five days. Ten witnesses were called. Thirty-eight exhibits were marked for identification and entered into evidence. Three attorneys, a Judge, the defendants, 12 jurors, two alternate jurors and the witnesses devoted their time, attention and energies to this trial. Twelve jurors deliberated for two days. It would have constituted a monumental waste of time and resources to terminate the trial without any finality for the participants, especially where the termination was *631 based solely upon the intervening religious holiday and not the inability of the jury to reach a unanimous verdict. But for this holiday, there would not have been any doubt that this court would have been within its sound discretion to require the jurors to continue their deliberations. (See, People v Johnson, 224 AD2d 635, lv denied 88 NY2d 849 [1996]; Matter of Plummer v Rothwax, 63 NY2d 243, 250 [1984].)
It was for the reasons stated above that this court found that under certain limited circumstances the court may, in its sound discretion, de-sequester the jury over the objections of the defense.

. Allen v United States, 164 US 492 (1896).

. Counsel for Pena stated that she was available for deliberations during the weekend. However, as there was a joint trial and defendant Cabrerra had a right to be present in the event of any communications from the jury, it was impossible to continue deliberations as to Pena only.

. Hindsight is of some benefit in this case. As stated, the jury returned on Monday morning and resumed their deliberations. They remained sequestered Monday night and returned with unanimous verdicts on Tuesday, October 24, 2000. At that time, defendant Pena was convicted of all counts and defendant Cabrerra was acquitted of all counts. The jury’s continued deliberation two days and one night following the separation for the weekend bolsters the court’s finding that the jurors were not subjected to outside influences during their separation.