■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KANSINYA LEWIS, Appellant. [920 NYS2d 846]—

Mercure, J.P. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered March 25, 2009, upon a verdict convicting defendant of the crime of endangering the welfare of a child.

In September 2007, defendant's parents and two siblings arrived at her home for a late afternoon visit. Defendant's boyfriend, codefendant Dejon Moore, was also staying with her. Defendant's family greeted her two-year-old daughter and asked to see her 11-month-old daughter (hereinafter the victim). Defendant stated that the victim was sick and in her crib. Defendant's parents and 12-year-old sister then entered the victim's room and found the normally active baby unresponsive to communication, clenching her fists in pain, unable to hold her head up, and bruised on the face and forehead. Defendant's parents immediately informed defendant that they were taking the victim to the hospital.

Defendant seemed surprised by the victim's condition and told her parents, as well as the emergency room nurse and physician, that she had taken the victim to another hospital earlier that day, where the baby was diagnosed with a fever and sent home. The emergency room staff determined that the victim had suffered a traumatic brain injury and, unable to confirm that defendant had taken her to a hospital earlier that day, contacted Child Protective Services. The victim was transferred to Albany Medical Center, where she presented as critically ill and in danger of dying from injuries that had been inflicted within the last two days and were consistent with shaken baby syndrome.

In response to police questioning regarding the victim's injuries, defendant stated that the baby had fallen off a bed five days earlier, sustaining bruises to her face. She also admitted to her mother that she had lied about taking the victim to the hospital earlier in the day. A Child Protective Services caseworker, Karlene Casso, thereafter questioned Moore, who similarly indicated that the victim's bruises resulted from a fall. Moore admitted to Casso and police, however, that he shook the baby at approximately 5:00 A.M. that morning because she had been crying and he was angry that defendant did not attend to her.

Defendant was charged in an indictment with endangering the welfare of a child, and Moore was charged with assault in the first degree and reckless assault of a child. Following a jury trial during which defendant's parents and siblings testified for the prosecution, defendant was found guilty as charged, and Moore was found guilty of reckless assault of a child. Defendant was sentenced to one year in jail. Defendant appeals, and we now affirm.

Initially, we reject defendant's argument that the evidence was legally insufficient to sustain her conviction. As relevant here, a person has endangered the welfare of a child when he or she has "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child" (Penal Law § 260.10 [1]). Endangering the welfare of a child is "defined by the risk of injury produced by defendant's conduct"; "a defendant must simply be *aware* that the conduct may likely result in harm to a child, whether directed at the child or not" (*People v Johnson*, 95 NY2d 368, 372 [2000]; *see People v Hitchcock*, 98 NY2d 586, 590-591 [2002]; *People v Kennedy*, 75 AD3d 766, 768 [2010], *lv denied* 15 NY3d 853 [2010]). Here, defendant's family testified that when they found the victim in her crib, it was immediately apparent that she required medical attention. While defendant seemed surprised and confused about the victim's condition, she was aware that the victim was "sick" and informed her family—untruthfully—that she had already taken the victim to the hospital. Further, defendant provided similar misinformation to medical providers attempting to treat the child in an emergent situation. In light of the obvious nature of the victim's injuries, defendant's failure to seek medical attention for the child and the reasonable inferences that could be drawn from defendant's false explanations regarding the child's condition and prior treatment, "there is [a] valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Dickson*, 21 AD3d 646, 648 [2005]; *see also People v Steinberg*, 79 NY2d 673, 681-682 [1992]).

Similarly lacking in merit is defendant's argument that County Court erred in denying her motion to suppress her statements to law enforcement personnel at the hospital and to Casso. "[T]he safeguards required by *Miranda* are not triggered unless a suspect is subject to 'custodial interrogation' [and] [t]he standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*People v*

*Paulman*, 5 NY3d 122, 129 [2005] [internal quotation marks and citations omitted]). Defendant was not restrained in any way during the questioning by police at the hospital, which was investigatory in nature and frequently interrupted as police inquired of defendant, her parents and medical personnel. Indeed, defendant was permitted to leave the hospital after the questioning, while the investigating officers went to speak with Moore at the police station. Under the circumstances, a reasonable person in defendant's position would have believed she was free to leave and, thus, her statements to police were properly admitted (*see People v Brown*, 77 AD3d 1186, 1186-1187 [2010]; *People v Lowin*, 71 AD3d 1194, 1196 [2010]; *People v Stackhouse*, 160 AD2d 822, 823 [1990], *lv denied* 76 NY2d 865 [1990]). Moreover, inasmuch as there is no evidence that Casso was "engaged in law enforcement activity or . . . acting under [the] direction or in cooperation with" police, defendant's statements to Casso cannot be deemed involuntary (CPL 60.45 [2] [b]; *see People v Texidor*, 71 AD3d 1190, 1191 [2010], *lv denied* 14 NY3d 893 [2010]; *cf. People v Wilhelm*, 34 AD3d 40, 44-49 [2006]).

We further conclude that County Court properly denied defendant's motion for a severance. The motion was concededly untimely, and defendant failed to show good cause for the delay in making the motion (*see* CPL 255.10 [1] [g]; 255.20 [1], [3]; *People v Wilburn*, 50 AD3d 1617, 1618 [2008], *lv denied* 11 NY3d 742 [2008]). In any event, as County Court determined in addressing the merits of the motion, severance was unwarranted here because the respective defenses of defendant and Moore were not in irreconcilable conflict (*see People v Wilburn*, 50 AD3d at 1618; *People v Funches*, 4 AD3d 206, 207 [2004], *lv denied* 3 NY3d 640 [2004]). The endangerment charge against defendant was based upon her failure to obtain medical treatment for the victim, and defendant claimed to be unaware of the victim's condition. That defense is not inconsistent with Moore's allegedly prejudicial statements to Casso that he had told police he shook the victim because the police needed to blame someone and he was trying to protect defendant, particularly in light of his explanation to Casso that he did not see defendant do anything to hurt the baby and that "she was a good mother who [took] good care of her children."

Finally, inasmuch as Moore's statements to Casso do not implicate defendant in any wrongdoing, their admission did not deprive her of the right under the Sixth Amendment of the US Constitution to confront the witnesses against her, despite Moore's decision not to testify (*see People v Dickson*, 21 AD3d at 647; *People v Johnson*, 224 AD2d 635 [1996], *lv denied* 88 NY2d

849 [1996]). Even if we were to assume that the statements were erroneously admitted, we would find that any error in this regard was harmless beyond a reasonable doubt (*see People v Dickson*, 21 AD3d at 647; *see also People v Lopez*, 25 AD3d 385, 386 [2006], *lv denied* 7 NY3d 758 [2006]; *cf. People v Hardy*, 4 NY3d 192, 198-199 [2005]).

Defendant's argument that she was denied a fair trial by an impartial jury and her assertions regarding prosecutorial misconduct are unpreserved for our review and do not warrant reversal in the interest of justice; her remaining contentions have been considered and found to be lacking in merit.

Rose, Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.