THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUBREY (ALNUTT) PAGAN, Appellant. [929 NYS2d 332]—

Mercure, J.P.

In 2004, a fire destroyed an apartment building that was purportedly occupied by defendant, codefendant Victor Pagan and John Hart, and owned by defendant's father, codefendant Jeffrey Alnutt. Defendant informed investigators that she may have caused the fire when she left her apartment's stove on unattended and, because other evidence was consistent with that explanation, the fire was initially deemed to have been accidental. Defendant, Pagan, Alnutt and Hart thereafter made claims against their respective insurance policies.

Police subsequently reopened their investigation into the cause of the fire after new information was discovered and, after being granted immunity from prosecution, Hart admitted that he had helped Alnutt set the fire as part of a plot to pursue fraudulent insurance claims. Pagan also contemplated accepting an offer of immunity by prosecutors, and told investigators that he "had knowledge of" the fire and "was involved in it." He ultimately refused, however, to speak further to police regarding the fire.

Alnutt, Pagan and defendant were thereafter charged in an indictment with numerous crimes arising from the plot. At the joint trial that ensued, Pagan did not testify, and his statements to investigators were admitted into evidence solely against him. Defendant was convicted of insurance fraud in the third degree, grand larceny in the third degree, reckless endangerment in the second degree, conspiracy in the fourth degree and conspiracy in the fifth degree. She was sentenced to an aggregate prison term of 1 to 3 years, ordered to pay restitution to her insurer, and now appeals.[1]

We affirm. Initially, we reject defendant's claim that her conviction was based upon legally insufficient evidence. Con-

---

1. Pagan and Alnutt were also convicted of various crimes, and their appeals are currently pending before this Court.

trary to her argument, Hart's accomplice testimony was sufficiently corroborated by other evidence that "tend[ed] to connect . . . defendant with the commission of" the charged crimes (CPL 60.22 [1]; *see People v Lee*, 80 AD3d 877, 878 [2011], *lv denied* 16 NY3d 832 [2011]). Compelling independent proof that defendant committed the charged offenses is not required to meet the corroboration requirement; rather, the evidence need only "tend[ ] to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (*People v Dixon*, 231 NY 111, 116 [1921]; *accord People v Reome*, 15 NY3d 188, 192 [2010]). In that regard, the People presented evidence that defendant purchased a renters insurance policy despite her precarious financial situation and, notably, increased her coverage shortly before the fire. Moreover, defendant admitted to her stepmother that she had not told investigators "what really happened," then instructed her stepmother to forget those comments. Defendant also sought to be reimbursed for possessions that were incongruous with her limited resources or belonged to other people but had been inexplicably placed in her apartment, which was consistent with Hart's testimony that extraneous items were placed in the apartments in order to inflate the insurance claims. The foregoing provides the requisite "slim corroborative linkage to otherwise independently probative evidence from" Hart, thereby satisfying the corroboration requirement (*People v Breland*, 83 NY2d 286, 294 [1994]; *see People v Gilbo*, 52 AD3d 952, 953-954 [2008], *lv denied* 11 NY3d 788 [2008]). Nor can we conclude, after evaluating the evidence in a neutral light and according deference to the jury's credibility assessments, that the jury's verdict was against the weight of the evidence (*see People v Berry*, 78 AD3d 1226, 1227-1228 [2010], *lv denied* 16 NY3d 828 [2011]).

Defendant next claims that her conviction of reckless endangerment in the second degree was inconsistent with her acquittal of arson in the third degree. Defendant concedes that the verdict in that regard was not "inherently self-contradictory" (*People v Tucker*, 55 NY2d 1, 8 [1981]; *see People v Hodges*, 66 AD3d 1228, 1231-1232 [2009], *lv denied* 13 NY3d 939 [2010]). She nevertheless argues that the acquittal of arson, when viewed in tandem with her conviction of conspiracy in the fourth and fifth degrees and insurance fraud in the third degree, implies that the jury found that she had not started the fire either personally or acting in concert with others. Therefore, defendant maintains, she could not simultaneously be guilty of reckless endangerment—which, as charged herein, required a finding that she had recklessly started the fire. Conspiracy,

however, "is an embrace crime, covering *all* of the overt acts and substantive crimes in the persisting criminal enterprise," and not necessarily the actual commission of the crime that was the object of the conspiracy (*People v Springer*, 127 AD2d 250, 256 [1987] [emphasis added], *affd for reasons stated below* 71 NY2d 997 [1988]). Hence, contrary to defendant's argument, the jury was not required to determine that defendant intentionally damaged the apartment building by setting a fire in order to convict defendant upon the conspiracy counts; rather, the jury was required to find that defendant committed an overt act in furtherance of the conspiracy (*see* Penal Law §§ 105.05, 105.10). Likewise, insurance fraud required a finding that defendant intentionally *concealed the cause of the fire* on her insurance claim, and the jury was not further obliged to find that she intended to damage the apartment building by setting the fire (*see People v Michael*, 210 AD2d 874, 874 [1994], *lv denied* 84 NY2d 1035 [1995]; *People v Amar*, 134 AD2d 601 [1987]). As such, the verdict is not inconsistent.

Defendant additionally contends that her right to confront witnesses was violated by the use of Pagan's statements at the joint trial. In light of her reliance upon both *Crawford v Washington* (541 US 36 [2004]) and *Bruton v United States* (391 US 123 [1968]) to support that claim, a discussion of the interplay between those cases is required. In *Crawford*, the Supreme Court of the United States held "that the Confrontation Clause generally prohibits the use of 'testimonial' hearsay *against a defendant* in a criminal case, even if the hearsay is reliable, unless the defendant has a chance to cross-examine the out-of-court declarant" (*People v Goldstein*, 6 NY3d 119, 127 [2005] [emphasis added], *cert denied* 547 US 1159 [2006]; *see Crawford v Washington*, 541 US at 59). There is no question that Pagan's out-of-court statements, made to an investigator, were testimonial in nature (*see Davis v Washington*, 547 US 813, 822 [2006]; *People v Rawlins*, 10 NY3d 136, 147-148 [2008], *cert denied* 558 US —, 129 S Ct 2856 [2009]). *Crawford* accordingly prohibits the use of Pagan's statements "against the other defendants in" this joint trial (*United States v Ramos-Cardenas*, 524 F3d 600, 609 [5th Cir 2008], *certs denied* 555 US —, —, 129 S Ct 247, 403 [2008]). A codefendant, however, is generally not "considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against [the] codefendant," and nothing in *Crawford* alters this long-established principle (*Richardson v Marsh*, 481 US 200, 206 [1987]; *see Cruz v New York*, 481 US 186, 190 [1987]; *United States v Ramos-Cardenas*, 524 F3d at 607, 609-610; *United States v Lung Fong Chen*, 393 F3d 139, 150 [2d Cir 2004], *certs denied* 546 US

870 [2005]; *People v Torres*, 47 AD3d 851, 852 [2008], *lv denied* 10 NY3d 817 [2008]). Thus, the Confrontation Clause is generally not implicated when a codefendant's statement is admitted "against" him or her alone.

*Bruton* sets out a narrow exception to this rule. Specifically, *Bruton* held that the Confrontation Clause prohibits the introduction of "the *facially incriminating* confession of a nontestifying codefendant . . . at their joint trial, even if the jury is instructed to consider the confession only against the codefendant" (*Richardson v Marsh*, 481 US at 207 [emphasis added]), because such statements are so powerfully incriminating and prejudicial "that limiting instructions cannot work" (*Gray v Maryland*, 523 US 185, 192 [1998]; *see Bruton v United States*, 391 US at 135-136). The *Bruton* exception, as such, applies only when a codefendant's statement directly inculpates the accused. A statement that incriminates only when linked with other trial evidence remains admissible (*see Richardson v Marsh*, 481 US at 208-211; *People v Lewis*, 83 AD3d 1206, 1208 [2011]; *People v Sutton*, 71 AD3d 1396, 1397 [2010], *lv denied* 15 NY3d 778 [2010]). In that instance, "while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton*'s exception to the general rule" (*Richardson v Marsh*, 481 US at 208; *see United States v Lung Fong Chen*, 393 F3d at 148-150; *People v Dickson*, 21 AD3d 646, 647 [2005]). In short, if the statement does not directly inculpate the accused, it cannot be deemed to have been admitted *against* him or her and "[t]he same attenuation . . . that prevents *Bruton* error also serves to prevent *Crawford* error" (*United States v Lung Fong Chen*, 393 F3d at 150; *see United States v Harris*, 167 Fed Appx 856, 859 [2d Cir 2006], *cert denied* 549 US 925 [2006]; *People v Torres*, 47 AD3d at 852).

Here, Pagan's statements were admitted as evidence against him alone and the jury was instructed to that effect.[2] Nor did his statements implicate defendant. As noted above, Pagan stated that he "had knowledge" of and "was involved in" the fire, giving rise to an inference that the fire was not accidental. Defendant concedes that "it does not necessarily follow [from

---

2. The fact that Pagan's statements were not introduced as evidence against defendant makes this case readily distinguishable from those in which the plea allocution of an individual was admitted into evidence against a defendant at his or her trial on charges arising from the same incident, thus running afoul of *Crawford* (*compare People v Hardy*, 4 NY3d 192, 196-197 [2005], *with People v Lewis*, 83 AD3d at 1208).

those statements] that [she] was also involved" in the arson. Rather, Pagan's statements only take on additional meaning when viewed in the light of other trial evidence that implicated defendant in the arson plot. Accordingly, Pagan's statements did not "identif[y] the defendant as the perpetrator of a crime" for purposes of *Crawford* or *Bruton* (*People v Ruis*, 11 AD3d 714, 714 [2004], *lvs denied* 4 NY3d 747, 748 [2004]). Nor could the statements "be read by the jury [only] as inculpating defendant" under the facts of this case (*People v Wheeler*, 62 NY2d 867, 869 [1984]). Defendant, Pagan and Alnutt were tried together for the arson plot, Hart was admittedly involved in it, and Pagan's statements could easily be read as implicating any or none of them (*see People v Timberlake*, 300 AD2d 219, 219-220 [2002], *lv denied* 99 NY2d 633 [2003]; *People v Adams*, 225 AD2d 506, 506 [1996], *lv denied* 88 NY2d 932 [1996]; *cf. People v Reid*, 82 AD3d 1495, 1497-1498 [2011]). In short, Pagan's statements did "not implicate defendant in any wrongdoing," and their admission at trial did not deprive defendant of her right to confront witnesses against her (*People v Lewis*, 83 AD3d at 1208; *see People v Dickson*, 21 AD3d at 647).

Defendant's remaining contention has been examined and found to be without merit.

Spain, Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.