■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER OATHOUT, Appellant. [935 NYS2d 704]—

Defendant was arrested and charged with the intentional murder of a victim who, in October 2006, was found beaten, strangled and stabbed to death inside his City of Albany apartment. During a canvas of the building where the murder had taken place, detectives from the City of Albany Police Department found defendant asleep on a couch in an apartment belonging to Ernest Nelson. After being awakened, defendant gave police a false name and fled the building after they left the apartment. Later, when the police determined defendant's true identity and learned that warrants were outstanding for his arrest, he was taken into custody in New York City and returned to Albany County where he was incarcerated. Three weeks later, after he was released from jail, defendant agreed to talk with police about the murder. Initially, he claimed that he did not know the victim, but later stated that while his fingerprints might be found in the victim's apartment, he was not there on the night of the attack and was not involved in the murder. Defendant told police that he gave them a false name when they first questioned him because warrants had been issued for his arrest and, if they knew his true identity, he would have been arrested and incarcerated. Upon completion of the interview, defendant was not charged with any crime and was released by the police.

As part of their investigation, the police made contact with Oswaida Lugo, a confidential informant with a lengthy criminal record whose name appeared in the visitor's log book of the victim's apartment building, indicating that she had been on the premises on the night of the murder. Lugo initially told police that she knew nothing about the murder, but later admitted that she had gone to the victim's apartment that evening with defendant to participate in an act of prostitution. She stated that while she was in the apartment, defendant went into the bathroom with the victim and, when they emerged, defendant told her that she did not "have to do nothing," defendant gave her some money, and then he argued with the victim about the amount of money the victim was going to pay defendant. According to Lugo, defendant attacked the victim when he refused

to give him more money and, during the assault, strangled the victim and then stabbed him numerous times with a knife. She testified that after the attack, defendant gave her $20, which she used to purchase a "20 piece" of crack cocaine. Based on Lugo's statement, defendant was arrested and charged with the victim's murder. After a jury trial, defendant was found guilty of murder in the second degree, and subsequently sentenced to a prison term of 25 years to life. He now appeals, arguing, among other things, that the verdict was against the weight of the credible evidence, that he was denied the effective assistance of counsel and that the People improperly presented evidence at trial regarding his criminal background.

Initially, defendant claims that Lugo was an accomplice and, given her criminal record and background as a confidential informant, her testimony is inherently suspect and, if rejected as incredible, the jury's verdict cannot be support by the weight of the credible evidence introduced at trial. He argues that Lugo is the only witness called by the People who directly connects him to the commission of this murder, and her testimony alone cannot support this conviction because there is no independent evidence connecting him to the commission of the murder (see CPL 60.22 [1]; People v Caban, 5 NY3d 143, 154 [2005]; People v Lumnah, 81 AD3d 1175, 1176 [2011], lv denied 16 NY3d 897 [2011]; People v Lee, 80 AD3d 877, 878 [2011], lv denied 16 NY3d 832 [2011]). We disagree. While Lugo admitted being in the apartment when the murder took place, no evidence was presented that she participated in the attack of the victim or had any involvement in the acts that resulted in his murder. As such, simply because she was at the apartment to participate in an act of prostitution did not make her an accomplice to this murder or any other "offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2] [b]; see People v Caban, 5 NY3d at 152).

Moreover, even if Lugo was an accomplice, ample evidence was presented at trial from independent sources that corroborated her testimony and connected defendant with the commission of the charged crime (see CPL 60.22 [1]; People v Pagan, 87 AD3d 1181, 1182 [2011]; People v Lee, 80 AD3d at 877). Defendant's presence in the apartment building on the night of the murder, his use of a false name when questioned by the police, his flight from the scene after speaking with police, a statement attributed to him by a third party that he left the area "because possibly he was involved in a murder" and testimony from a fellow inmate claiming that defendant admitted committing the murder all served to corroborate Lugo's testimony and

constituted competent proof connecting defendant to the commission of this crime. Moreover, the medical examiner's testimony confirming that the victim's death was caused by manual strangulation and multiple stab wounds, when viewed with the other evidence introduced at trial, leads us to conclude that defendant's conviction was not against the weight of the credible evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Pagan*, 87 AD3d at 1182).

Defendant also alleges that he was denied a fair trial when the People elicited testimony that he was "a gay prostitute for old men" and a habitual crack user. While no objection was raised to the admission of this evidence, given his claim of ineffective assistance of counsel, our review of this issue is required (*see People v Echavarria*, 53 AD3d 859, 863 [2008], *lv denied* 11 NY3d 832 [2008]). County Court did rule, prior to Lugo testifying at trial, that she would be permitted to testify as to why she went with defendant to the victim's apartment and, while there, defendant had sex with the victim to earn money to buy cocaine. Given the integral role the particulars of this testimony played in Lugo's narrative regarding the events that led up to the victim's murder and defendant's explanation to the police that he left the area because of the arrest warrants, it can hardly be argued that this evidence was not relevant, or that its relevance did not outweigh any prejudicial impact that might result if it were admitted at trial (*see People v Echavarria*, 53 AD3d at 863; *People v Johnson*, 233 AD2d 761, 763 [1996], *lv denied* 89 NY2d 1012 [1997]). We agree with defendant that the court's ruling did not address the admissibility of other evidence that the People offered at trial regarding defendant's activities as a prostitute or his illegal use of drugs, and this evidence should have been considered at the hearing prior to it being received at trial (*see generally People v Moore*, 59 AD3d 809, 811-812 [2009]). However, as previously noted, the criminal activity disclosed by such evidence was properly before the jury based upon the court's earlier ruling, and any error that may have been committed by the admission of this additional proof regarding defendant's criminal background did not deprive him of a fair trial (*see People v Johnson*, 233 AD2d at 763).

Defendant also claims that he was denied the effective assistance of counsel. He raises a myriad of complaints regarding counsel's efforts on his behalf and argues that counsel's inexperience and general unfamiliarity with applicable criminal law deprived him of meaningful representation. While we agree that counsel's representation of defendant may, at times, have been unorthodox, it was not, when the record is viewed as a whole, ineffective.

Initially, we note that when making a claim regarding ineffective assistance of counsel, a "defendant must demonstrate that his [or her] attorney failed to provide meaningful representation" and that there are no "strategic or other legitimate explanations for counsel's allegedly deficient conduct" (*People v Caban*, 5 NY3d at 152 [internal quotation marks and citation omitted]; *see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]). As for the specifics of defendant's claim, he initially makes reference to an application by an Assistant District Attorney (hereinafter ADA) prior to trial requesting that another attorney be assigned by County Court to assist defendant's counsel in the conduct of this defense. Defendant's counsel did not oppose this application, but took issue with any assertion that he was inexperienced or uninformed about the nuances of criminal law and criminal procedure. While County Court did not specifically rule on the ADA's request, it did not appoint another lawyer to assist counsel, and defendant—after initially expressing reservations about defense counsel—reaffirmed his wish that counsel continue to represent him during this prosecution. Also, the ADA's application focused on preliminary matters that had no effect on the subsequent proceedings or resulted in any perceptible prejudice that can be said to have deprived defendant of a fair trial. As for the ADA's claim that at the preliminary hearing defense counsel demonstrated that he was not familiar with how to use a prior inconsistent statement to impeach a witness or how to properly lay the foundation for the admission of certain evidence, the record at trial—and, in particular, defense counsel's cross-examination of Lugo—established that these concerns were groundless.

Defendant also argues that counsel's failure to object to repeated references made by the ADA to his criminal background prejudiced him and served to deprive him of a fair trial. However, as we have previously noted, such an objection, if made, would not have kept from the jury the details of defendant's criminal background or that he was at the victim's apartment at the time of the murder for an illicit purpose. As for defendant's other complaints regarding counsel's performance at trial, the record reveals that counsel challenged Lugo's credibility by vigorously cross-examining her regarding numerous inconsistencies in statements she made to the police, including her failure to accurately identify, when first questioned by the police, where in the apartment the murder actually took place. Counsel used this inconsistency to argue that Lugo could not have made such a mistake if she actually witnessed the murder, and claimed that she only corrected this error upon being

prompted by the police. Counsel also exposed in detail Lugo's extensive criminal record and raised relevant questions as to her credibility and how it was compromised by promises she had received from the police in return for her testimony as a witness against defendant.

As for defendant's use of a false name and his flight to New York City on the night of the murder, counsel argued and introduced evidence to support his contention that defendant left the area, not because he was guilty of murder, but because he knew warrants had been issued for his arrest that could result in his incarceration. Also, counsel established that when defendant traveled by bus to New York City, he did so on a ticket that had been purchased on a date prior to the murder. Moreover, counsel introduced evidence that, despite the brutal nature of the murder, no blood was seen on defendant by witnesses or police officers who were with him shortly after the crime had been committed, nor was defendant's DNA found on the victim's body despite the physical contact that Lugo claimed the two had when the strangulation and assault with the knife took place. In his summation, counsel made cogent arguments that served to expose significant gaps in the People's case against defendant and sought to minimize the import of defendant's criminal record by arguing that "defendant is an unfortunate young man . . . who was in the wrong place at the wrong time . . . was smoking crack, doing drugs, hanging out with the bad people," but that nothing in his background indicated that he was violent or capable of committing a murder. On balance, defendant's claim that counsel failed to provide him with meaningful representation, in our view, is not born out by a fair reading of the record (see People v Abare, 86 AD3d 803, 805-806 [2011]; compare People v Arnold, 85 AD3d 1330, 1332-1334 [2011]).

Finally, we reject defendant's claim that County Court erred by denying his CPL 330.30 motion without a hearing. The factual allegations made by defendant in support of this motion and his claim that counsel would not allow him to testify at trial are not reflected in the record and, therefore, a hearing was not required prior to County Court denying this motion (see People v Hampton, 64 AD3d 872, 875-876 [2009], lv denied 13 NY3d 796 [2009]; see also People v Hardy, 49 AD3d 1232, 1233 [2008], affd 13 NY3d 805 [2009]).

Rose, J.P., Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed.