Egan Jr., J.
Appeal from a judgment of the Supreme Court (Lamont, J.), rendered July 19, 2002 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (two counts), criminal use of drug paraphernalia in the second degree (two counts) and criminal possession of a weapon in the third degree (four counts).
In August 2001, defendant became a target of a narcotics investigation and, after observing, among other things, defendant enter and exit 677 Third Street and 46 Lexington Avenue in the City of Albany on a number of occasions, the Albany Police Department obtained and executed search warrants at those locations. As a result, defendant was indicted and charged with criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (two counts), criminal use of drug paraphernalia in the second degree (two counts) and criminal possession of a weapon in the third degree (four counts). Following a jury trial, defendant was convicted on all counts and sentenced as a second felony offender to an aggregate prison term of 21 years to life. This appeal by defendant ensued.
Defendant’s initial claim — that the verdict is not supported by legally sufficient evidence — is unpreserved for our review in light of defendant’s failure to make a particularized motion for dismissal at the close of the People’s case (see People v Caston, 60 AD3d 1147, 1148 [2009]). However, inasmuch as defendant also contends that the verdict is against the weight of the evidence, “we will consider the evidence adduced as to each of the elements of the challenged crimes in the context of that review” (People v Kennedy, 75 AD3d 766, 767 [2010], lv denied 15 NY3d 853 [2010] [internal quotation marks and citation omitted]). As the People proceeded under the theory of constructive possession, they were required to establish that defendant exercised “dominion and control over the [contraband or the] area where *1434 the contraband was found” (People v Carter, 74 AD3d 1375, 1377 [2010], lv denied 15 NY3d 772 [2010] [internal quotation marks and citation omitted]; see Penal Law § 10.00 [8]; People v Echavarria, 53 AD3d 859, 861 [2008], lv denied 11 NY3d 832 [2008]).
Here, the evidence at trial revealed that beginning on August 7, 2001 and continuing on a number of days thereafter, various members of the Albany Police Department’s Community Response Unit (hereinafter CRU) undertook either fixed or roving surveillance of defendant and documented his travels back and forth between 46 Lexington Avenue and 677 Third Street — the latter of which police believed to be defendant’s residence. On August 31, 2001, two officers set up fixed surveillance across the street from 677 Third Street at approximately 6:00 a.m. Later that morning, defendant emerged and got into a black 2001 Infiniti — a vehicle he had been observed driving on a number of prior occasions — and drove to the vicinity of 46 Lexington Avenue.
At approximately 1:00 p.m., the surveillance team that was set up across the street from 46 Lexington Avenue saw defendant approach on foot with Philip Stanfield and proceed to that address. Defendant entered while Stanfield remained outside, looking up and down the street. When defendant emerged, he handed Stanfield a plastic bag containing a “large chunk of [an] off-white substance,” which Stanfield placed down his pants. Defendant and Stanfield then departed the Lexington Avenue address on foot but returned within the hour. This time, both defendant and Stanfield entered and stood inside the doorway. From their vantage point, the surveillance team again observed defendant hand Stanfield a large chunk of an off-white substance — “approximately the size of an egg.”[1] Both of the encounters between defendant and Stanfield were captured on videotape that, together with certain still photographs, were admitted into evidence.
The police then obtained and executed search warrants for 46 Lexington Avenue, 677 Third Street and the Infiniti. As a result of those searches, the police seized a .45-caliber handgun, a Tec 9 submachine gun, ammunition and more than two ounces of crack cocaine packaged in several plastic baggies from a common hallway at the 46 Lexington Avenue address, together with 10 ounces of crack cocaine, two digital scales, rubber gloves, *1435 numerous small plastic bags and $14,500 in cash from a bedroom at the 677 Third Street address. A search of that bedroom also revealed a quantity of men’s clothing, together with a picture of defendant and certain personal papers belonging to him. When defendant was apprehended offsite and searched, the police also recovered $1,241 in cash and three keys, one of which fit the exterior door of 46 Lexington Avenue and one of which fit the door to the second-floor apartment at that address.[2] Additionally, one of the officers testified that, when asked during the booking process where he lived, defendant indicated that he resided at 677 Third Street. Finally, the trial testimony established that the weapons seized were operational, and the parties stipulated to the chain of custody and positive test results for the drugs seized from the Lexington Avenue and Third Street addresses.
Viewing this evidence in the light most favorable to the People, we are satisfied that there is a valid line of reasoning from which a jury reasonably could conclude that defendant exercised dominion and control over the drugs and guns in issue (see generally People v Bleakley, 69 NY2d 490, 495 [1987]; compare People v Carmichael, 68 AD3d 1704, 1705 [2009], lv denied 14 NY3d 798 [2010]; People v Oldacre, 53 AD3d 675, 678-679 [2008]) — notwithstanding the fact that defendant’s access to the contraband may not have been exclusive (see e.g. People v Pinkney, 90 AD3d 1313, 1314-1315 [2011] [a defendant may be found guilty of constructive criminal possession of a weapon located on premises even though others may have had access thereto]). Further, despite defendant’s protestations to the contrary, we do not find the verdict to be against the weight of the evidence.
Nor are we persuaded that Supreme Court erred in denying defendant’s motion for a mistrial based upon the People’s failure to notify defendant that they intended to introduce a statement made by him during booking to establish that he resided at the Third Street address. Simply put, the People were not required to include “pedigree information obtained in response to a routine question asked during the booking process” in their CPL 710.30 notice (People v Hamilton, 227 AD2d 669, 672 [1996], lv denied 88 NY2d 1068 [1996]; see People v Sidbury, 24 AD3d 880, 881 [2005], lv denied 6 NY3d 818 [2006]).
We reach a similar conclusion with respect to defendant’s motion for a mistrial based upon the People’s asserted violation of Supreme Court’s Molineux ruling. When the People made their *1436 initial Molineux application, no mention was made of the two uncharged sales to Stanfield. When one of the CRU’s detectives took the stand, however, he testified at length regarding his observations of those uncharged sales, and the videotape of those transactions was received into evidence. Defense counsel moved for a mistrial,[3] and Supreme Court thereafter engaged in a “Ventimiglia-type discussion” with counsel (People v Civitello, 152 AD2d 812, 813 [1989], lv denied 74 NY2d 947 [1989])— noting, and correctly so, that these transactions should have been part of the People’s original Molineux application.
As to the substance of Supreme Court’s analysis, it is apparent that the contemporaneous uncharged sales were admissible to establish the intent to sell element under Penal Law § 220.16 (1) (see People v Hernandez, 27 AD3d 229, 229 [2006], lv denied 7 NY3d 790 [2006]; People v Flores, 26 AD3d 196 [2006], lv denied 7 NY3d 756 [2006]), were “inextricably interwoven with the drug possession charges” (People v Kirk, 16 AD3d 230, 230 [2005], lv denied 5 NY3d 790 [2005]; see People v Hernandez, 27 AD3d at 229) and, finally, “provided a complete and coherent narrative of the events leading to defendant’s arrest” (People v Antegua, 7 AD3d 466, 467 [2004], lv denied 3 NY3d 670 [2004]; see People v Flores, 26 AD3d at 196). Hence, we have no quarrel with Supreme Court’s determination that the uncharged sales were highly probative and admissible under one or more of the recognized Molineux exceptions (see People v Molineux, 168 NY 264, 293 [1901]). Additionally, we are satisfied that Supreme Court balanced “ ‘the probative value and the need for the evidence against the potential for delay, surprise and prejudice’ ” (People v Wilkinson, 71 AD3d 249, 254 [2010], quoting People v Alvino, 71 NY2d 233, 242 [1987]).
Finally, based upon our review of the record as a whole, we cannot say that defendant was denied the effective assistance of counsel. To the extent that defendant faults counsel for failing to request a limiting instruction — either following Supreme Court’s ruling as to the admissibility of the contemporaneous uncharged sales or at the time of the final charge — counsel may *1437 well have made a strategic decision in this regard, reasoning that such a request would only call further attention to the uncharged sales and, hence, would not be in his client’s best interest (see People v Cherry, 46 AD3d 1234, 1238 [2007], lv denied 10 NY3d 839 [2008]; see also People v McCall, 75 AD3d 999, 1002 [2010], lv denied 15 NY3d 894 [2010]). Further, counsel provided cogent opening and closing statements, made appropriate motions and objections — including a motion for a mistrial — and effectively cross-examined the People’s witnesses (see People v Abare, 86 AD3d 803, 805-806 [2011]). Under these circumstances, and viewing counsel’s representation in its entirety, we are satisfied that defendant was afforded meaningful representation. Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Mercure, J.P, Spain, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed.

. Stanfield subsequently was convicted of criminal possession of a controlled substance in the third degree based upon these transactions but, upon appeal, we reversed and remitted the matter for a new trial {People v Stanfield, 7 AD3d 918 [2004]).

. The search of that apartment, which apparently was leased to someone other than defendant, did not disclose any contraband.

. Although defense counsel admittedly raised no objection to the proffered testimony or videotape while the detective was on the stand, counsel moved for a mistrial shortly thereafter — based upon the asserted Molineux violation — and asked that all testimony and evidence relative to the uncharged sales be stricken, thereby sufficiently preserving this issue for our review (see CPL 470.05 [2]; compare People v Echavarria, 53 AD3d at 862-863). In any event, inasmuch as defendant also raises an ineffective assistance of counsel claim in this regard (see infra), we nonetheless would review the Molineux issue in that context (see People v Oathout, 90 AD3d 1418, 1421 [2011]; People v Echavarria, 53 AD3d at 863).