■ The People of the State of New York, Respondent, v Keith Johnson, Appellant. [999 NYS2d 46]—

Judgment, Supreme Court, Bronx County (William I. Mogulescu, J.), rendered July 19, 2011, convicting defendant, after a jury trial, of robbery in the second degree, petit larceny, menacing in the second degree, and possession of an imitation pistol, and sentencing him to an aggregate term of five years, reversed, on the law, and the matter remanded for a new trial.

The issue presented is whether defendant's rights under *Bru-*

*ton v United States* (391 US 123 [1968]) were violated by the admission into evidence of the codefendant's grand jury testimony at their joint trial. The People's case was founded primarily on the testimony of an undercover officer, who testified that he approached defendant and asked, "What's good?" mentioning "crack." After asking the undercover if he was a cop, defendant told the undercover to follow him. Defendant got into the front passenger seat of a silver Jeep Liberty in which the codefendant sat in the driver's seat, and the undercover approached the open front passenger window. Defendant told the undercover, "Give [me] the money" and the undercover replied, "No, give me the stuff." Defendant reached into his groin area, creating the impression that he was retrieving drugs, and the codefendant asked to count the money. In the belief that he was about to receive narcotics from defendant, the undercover leaned into the car and reached past defendant to hand the codefendant $30 in prerecorded buy money. As the undercover leaned back out, expecting to take drugs from defendant, defendant pulled a pistol from his pants. Believing the gun to be real, the undercover stepped back, raised his hands slightly, and moved out of its path, shouting, "Gun, gun, gun," to alert the field team that a gun was being pointed at him. The Jeep pulled out, and as it did, defendant turned his body toward the open window and pointed the gun partway out of it, at the undercover, who drew his weapon and fired once, striking the rear passenger window.

During the subsequent stop of the vehicle and arrest of its occupants, the police recovered $30 in pre-recorded buy money from the codefendant's front pants pocket and an imitation pistol resembling a Walther, covered in blood, from between the front passenger seat and the door.

The codefendant's grand jury testimony was, in essence, that on the night in question he was driving around with defendant in a Jeep, looking for defendant's car, which had recently been stolen. Around midnight, defendant said he wanted to get something to eat, so the codefendant stopped at 167th Street, near a couple of restaurants, and kept the car idling while defendant got out to get some food. The codefendant claimed not to be paying much attention until defendant got back into the car. After defendant closed the car door, "someone came to the vehicle talking about where is the stuff and reaching money out." That person "with money in his hand [was] talking about where is the stuff?" The codefendant testified that he then "knew it was time for me to leave." He claimed not to see what defendant was doing at that point and denied having seen a

black plastic toy gun in the car. As the codefendant drove off, "[t]he money dropped in the car." The guy who had come to the window just "left it in my car." At the same time, a shot was fired, the back window of the car shattered, and defendant said, "I am hit." The codefendant admitted that when the car was subsequently stopped by the police, the $30 identified in court as prerecorded buy money was in his pants pocket; he said he had taken the money and put it in his pants.

Under *Bruton v United States*, "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant" (*Richardson v Marsh*, 481 US 200, 207 [1987]). Since the rule only applies where the codefendant's statement was "incriminating on its face, and [not where it] became so only when linked with evidence introduced later at trial" (*Richardson*, 481 US at 208), the question before us is whether the codefendant's grand jury testimony was facially incriminating as to defendant, rather than incriminating only when linked to other evidence.

The court found that the codefendant's statement was not "facially incriminating as to Mr. Johnson" because nothing in the statement suggested that defendant was involved in any illegal conduct. We disagree.

Although the codefendant's grand jury testimony was intended as an innocent explanation of the events surrounding the alleged robbery, and admitted no wrongdoing, nevertheless it was "facially incriminating" as to defendant within the meaning of *Bruton*.

The codefendant's narrative placed defendant with the codefendant throughout the relevant events and, specifically referring to defendant approximately 40 times, described defendant's conduct. Among other things, the statement recounted that, after defendant's return to the codefendant's car following an absence to "get food," the alleged robbery victim (an undercover officer) appeared at the car window, asked where the "stuff" was, and dropped prerecorded buy money (the property allegedly stolen in the charged robbery) into the car. This narrative suffices to create an inference that defendant, while outside the codefendant's vehicle, had purported to set up a deal for a sale of contraband that was to culminate in the vehicle, but did not fulfill the deal once he entered the vehicle.

In *People v Martin* (58 AD3d 519 [1st Dept 2009], *lv denied* 12 NY3d 818 [2009]), we found that a codefendant's statement was violative of *Bruton* under analogous circumstances, even

though the "brief references merely placed defendant at the scene, and his presence at the scene was essentially consistent with the defense theory of the case" (*id.* at 519). The incriminating implications against defendant are far stronger here.

Although in *Martin* we found the error to be harmless, here, we cannot say that admission of the codefendant's statement was harmless beyond a reasonable doubt, in view of the extensive references to defendant and the indications that defendant had purported to set up a drug deal with an individual whom he then led back to the car (*see People v Hamlin*, 71 NY2d 750, 760 [1988]). As defendant points out, there were numerous inconsistencies, gaps, and allegedly problematic aspects of the People's evidence that, although plausibly characterized as innocuous by the People, might have been relied upon to create reasonable doubt in a trial at which the codefendant's statement was not part of the evidence. Further, and most significantly in our view, in this case in which the defense claimed that the police fabricated a story of a sham drug sale leading to a robbery in order to excuse the undercover officer's improper shooting of defendant as the codefendant's car pulled away, the codefendant's statement was the only nonpolice evidence that the codefendant possessed the buy money when the car was stopped.

We also note that defense counsel made a timely application for preclusion of the codefendant's grand jury testimony, deletion of all references to defendant, or a severance. Since we are ordering a new trial, we find it unnecessary to reach defendant's remaining arguments. Concur—Tom, J.P., Friedman, Andrias and Saxe, JJ.

DeGrasse, J., dissents in a memorandum as follows: I dissent because I disagree with the majority's conclusion that the grand jury testimony of Rushing, defendant's codefendant, who did not testify at trial, was facially incriminating as to defendant under the standard articulated by the Supreme Court in *Bruton v United States* (391 US 123, 135-136 [1968]) and further explained by the Court in *Richardson v Marsh* (481 US 200, 207-209 [1987]).

Defendant's prosecution stems from an undercover drug buy-and-bust operation conducted by a team of police officers on July 8, 2009 in the vicinity of East 167th Street and Grant Avenue, in the Bronx, where defendant was encountered. The undercover police officer, UC 44, approached and told defendant that he was looking for $30 worth of crack. Defendant asked UC 44 if he was a cop. In response, UC 44 lifted his shirt to show that he was not armed or wired. As directed by defendant,

UC 44 followed him around the corner. With UC 44 trailing, defendant got into the front passenger seat of a Jeep. UC 44 testified that defendant demanded the money, and he, UC 44, replied, "No, give me the stuff." Rushing, who was sitting in the driver's seat, asked to count the money, in response to which UC 44 leaned into the car, reached over defendant, and handed Rushing $30 in prerecorded buy money. UC 44 testified that defendant then pulled an object, which later turned out to be a toy pistol, from his pants. UC 44 stepped away from the vehicle and signaled the presence of a weapon to the field team by exclaiming, "Gun, gun, gun!" over his Kel transmitter. Defendant pointed the toy pistol at UC 44 as Rushing drove away. UC 44 fired a shot from his own weapon that he had secreted on his hip. The bullet went through the rear passenger window and struck defendant's shoulder.

A few blocks away, the field team apprehended and removed defendant and Rushing from the Jeep. At this time, Sergeant Urena saw the toy pistol, covered in blood, between the front passenger seat and the door. Lieutenant Rodriguez and Detective Baldwin also saw the toy pistol inside of the Jeep. Detective Alston searched Rushing and recovered the buy money from his front pants pocket. All of the foregoing facts were established by evidence that did not include Rushing's grand jury testimony.

On the other hand, Rushing's relevant grand jury testimony is as follows: On the evening of July 7-8, 2009, Rushing was driving around in a Jeep with defendant, his friend. At around midnight, defendant said he wanted to get something to eat. Rushing stopped the vehicle at East 167th Street near a couple of restaurants, where defendant got out and got food. As defendant went to get the food, Rushing saw no one walking with him. When defendant returned, "[another man] came to the vehicle [and stood at the window] talking about where is the stuff and reaching money out [sic]." Rushing did not see what defendant was doing at that time. As Rushing drove away, a shot was fired, striking defendant. The police stopped the vehicle at a traffic light and arrested defendant and Rushing. Rushing did not see any firearm or toy gun in the vehicle before the incident. Nor did he see defendant pull the gun on the person standing at the window. Before shooting defendant, the man who demanded the "stuff" left the money in the Jeep. Rushing put the money in his pants pocket, from which it was recovered upon his arrest.

Defendant and Rushing were charged in an indictment with the crimes of robbery in the second degree (aided by another actually present), robbery in the second degree (displayed what

appeared to be a pistol), petit larceny, criminal possession of stolen property in the fifth degree, unlawful use of an imitation firearm, and menacing in the second degree. The jury convicted defendant of the charges under the robbery in the second degree (display of a weapon) count as well as the petit larceny, imitation firearm, and menacing counts. Defendant was acquitted of robbery under the aided by another count and of criminal possession of stolen property. Rushing was convicted under the petit larceny and criminal possession of stolen property counts and acquitted of all other charges.

Defendant argues that the admission into evidence of Rushing's grand jury testimony violated his right to confront witnesses against him under the Confrontation Clause of the Sixth Amendment to the United States Constitution (see Crawford v Washington, 541 US 36 [2004]). Defendant also contends that he was implicated by Rushing's grand jury testimony and that its admission constituted prejudicial error even in light of the trial court's limiting instruction (see Bruton, 391 US at 135). Crawford "establishes that the Confrontation Clause generally prohibits the use of 'testimonial' hearsay against a defendant in a criminal case, even if the hearsay is reliable, unless the defendant has a chance to cross-examine the out-of-court declarant" (People v Goldstein, 6 NY3d 119, 127 [2005], cert denied 547 US 1159 [2006] [emphasis added]). Nonetheless, a codefendant whose testimony is introduced at a joint trial is not considered a witness "against" a defendant if the jury is instructed to consider the testimony only against the codefendant (Marsh, 481 US at 206). This principle set forth in Marsh was unaffected by Crawford (see People v Pagan, 87 AD3d 1181, 1183 [3d Dept 2011], lv denied 18 NY3d 885 [2012]; see also United States v Lung Fong Chen, 393 F3d 139, 150 [2d Cir 2004], cert denied 546 US 870 [2005]). Accordingly, the Confrontation Clause is generally not implicated where a nontestifying declarant's statement is admitted against him or her alone (People v Pagan, 87 AD3d at 1184).

In Bruton, however, the Supreme Court held that a defendant is deprived of the Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at a joint trial, even if the jury is instructed to consider the confession only against the codefendant (Bruton, 391 US at 135-136). Therefore, under the Supreme Court's interpretation of Bruton and Marsh, a codefendant's facially incriminating statement is so powerfully prejudicial that a limiting instruction would be of no use (see Gray v Maryland, 523 US 185, 192 [1998]). There is no reason to assume, however,

that every statement by a codefendant is facially incriminating. A codefendant's statement is facially incriminating only when it directly inculpates the accused (*see People v Pagan*, 87 AD3d at 1184). On the other hand, a statement is not facially incriminating if it inculpates only when linked with other evidence (*see Marsh*, 481 US at 208-211). The admission of such a statement with a limiting instruction would not constitute a *Bruton* or *Crawford* violation (*see People v Pagan*, 87 AD3d at 1184; *see also People v Bowen*, 309 AD2d 600 [1st Dept 2003], *lv denied* 1 NY3d 568 [2003]; *People v Johnson*, 162 AD2d 620 [2d Dept 1990], *lv denied* 77 NY2d 996 [1991]).

In this case, Rushing's grand jury testimony was not facially incriminating because it did not implicate defendant in any of the conduct underlying his conviction under the robbery, petit larceny, imitation firearm, and menacing counts. Specifically, Rushing made no mention of any interaction between defendant and UC 44 before the latter purportedly approached the Jeep and demanded the "stuff" before firing a shot. Rushing did not testify that defendant demanded or took possession of the buy money. Moreover, he asserted that he never saw a toy pistol. In sum, the bizarre encounter Rushing recounted in his grand jury testimony did not attribute any criminality to defendant.

Defendant's reliance on Rushing's particular testimony that the $30 was in his pocket is misplaced. Defendant argues that he was directly implicated by this evidence. However, as noted, a statement that inculpates only when linked with other evidence is not facially incriminating (*see Marsh*, 481 US at 208). For this reason, I disagree with the majority's position that Rushing's grand jury testimony was facially incriminating insofar as it "suffice[d] to create an inference" and gave "indications" that defendant purported to set up a drug deal with UC 44 while away from the vehicle and outside of Rushing's presence. Such an inference does not arise from Rushing's testimony alone. Here, the identity of the money as the proceeds of the robbery could not have been established by Rushing's grand jury testimony alone. That link could only have been established through the testimony of the police witnesses.

Even if Rushing's grand jury testimony was erroneously admitted, the error was harmless beyond a reasonable doubt. I reach this conclusion on the basis of "two discrete factors: (1) the quantum and nature of the evidence against defendant if the error is excised and (2) the causal effect the error may nevertheless have had on the jury" (*see People v Hamlin*, 71 NY2d 750, 756 [1988]). With regard to the first factor, the quantum of other evidence I rely upon includes the recovery of the buy

money and the toy pistol, the respective proceeds and instrument of the robbery. In addition, it is undisputed that defendant was apprehended shortly after and near the scene of his crime. In short, the evidence of defendant's guilt was generally overwhelming (*see Bowen*, 309 AD2d at 601).* As to the second factor, I see no chance that the jury would have acquitted defendant but for Rushing's grand jury testimony (*see e.g. People v Latine*, 151 AD2d 279, 282 [1st Dept 1989], *lv denied* 74 NY2d 812 [1989]). The majority cites *People v Martin* (58 AD3d 519 [1st Dept 2009], *lv denied* 12 NY3d 818 [2009]) in which we held that the introduction of a nontestifying codefendant's statements constituted *Bruton* error that was nonetheless harmless because the statements' "brief references merely placed defendant at the scene, and his presence at the scene was essentially consistent with the defense theory of the case" (*id.* at 519). In an attempt to distinguish *Martin*, the majority posits that "[t]he incriminating implications against defendant are far stronger here." The majority's position on this issue is perplexing. As noted above, by Rushing's account, defendant had walked away from him and his vehicle during the time of the robbery described in UC 44's testimony. Had there been a *Bruton* error it would have been even more harmless in this case, where Rushing did not testify about any robbery committed in his presence. Therefore, the majority's attempt to distinguish *Martin* in its harmless error analysis is entirely unavailing.

I also find defendant's appellate argument that the prosecutor's summation undermined the limiting instruction to be unpreserved (*see People v Romero*, 7 NY3d 911 [2006]), and it does not merit review in the interest of justice. Alternatively, in my view, the prosecutor's comments on Rushing's grand jury testimony as well as the other evidence were appropriate and provide no basis for a reversal.

In addition, I find that after conducting a *Hinton* hearing, the court providently exercised its discretion in permitting UC 44 and UC 110, another police officer who acted as the "ghost," to testify anonymously, identifying themselves only by their shield numbers. Each undercover officer testified about concerns for his safety associated with his undercover work. By this testimony, the People established a need for anonymity as required by *People v Waver* (3 NY3d 748 [2004]). Specifically,

---

* Although the majority finds it significant, defendant's claim of a coverup with respect to the shooting is a red herring. The shooting occurred after defendant committed the robbery, and the evidence of his guilt was unrefuted. The majority's passing reference to unspecified "inconsistencies, gaps, and allegedly problematic aspects of the People's evidence" is equally unpersuasive.

UC 44 testified that he had made numerous undercover purchases in the vicinity of the robbery and expected to continue doing the same work in the area. In addition, he testified about narcotics purchases from subjects who had yet to be apprehended. UC 110 testified that he had been working undercover for more than three years and had made numerous narcotics arrests. Moreover, defendant has made no showing that his knowledge of the undercover officers' names would have opened any "avenues of in-court examination and out-of-court investigation" (*Smith v Illinois*, 390 US 129, 131 [1968]) not already opened by knowledge of their shield numbers (*see People v Granger*, 26 AD3d 268 [1st Dept 2006], *lv denied* 6 NY3d 894 [2006]). I find no merit to defendant's remaining contentions and no basis for reducing the sentence.

