People v Williams (2022 NY Slip Op 02293)

People v Williams

2022 NY Slip Op 02293

Decided on April 6, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 6, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
REINALDO E. RIVERA
PAUL WOOTEN
WILLIAM G. FORD, JJ.

2018-15062
 (Ind. No. 174/16)

[*1]The People of the State of New York, respondent,
v
Brandon Williams, appellant.

Janet E. Sabel, New York, NY (Steven R. Berko), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and Christopher J. Blira-Koessler of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered December 6, 2018, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On December 26, 2015, at approximately 2:00 to 3:00 a.m., Donald Reed (hereinafter Donald), his sister, Shameek Reed (hereinafter Shameek), and Donald's girlfriend, Jenell Strickland, went to a business establishment in Queens called The Smoke Shop Lounge (hereinafter the smoke shop). The smoke shop was owned by Neon Osouna, whose cousin, the defendant, allegedly was the "doorman" or "bouncer" for the smoke shop. At approximately 5:00 to 6:00 a.m., Donald, Shameek, and Strickland left the smoke shop. Shortly thereafter, Osouna and an individual wearing a hooded sweatshirt shot Donald outside the smoke shop, resulting in Donald's death.
Shameek and Strickland identified the defendant to the police as the individual wearing the hooded sweatshirt in surveillance footage and in still photographs of the surveillance footage. Strickland testified at trial that she was familiar with the defendant's appearance from having seen him when she visited the smoke shop almost every weekend for approximately one year prior to the shooting, and from having smoked cigarettes with the defendant on several occasions during that period. Shameek also testified at trial that she was familiar with the defendant from having seen him on prior occasions and from smoking cigarettes with him, including shortly prior to the shooting.
Osouna and the defendant were charged with murder in the second degree and criminal possession of a weapon in the second degree. Prior to trial, the Supreme Court denied defense counsel's motion for severance of the trials of Osouna and the defendant, who were then tried together.
At trial, the People entered into evidence and played for the jury portions of Osouna's videotaped confession to police. During his confession, Osouna admitted his role in the shooting of Donald. Osouna also stated that prior to the shooting, Donald had "violated my peoples" by [*2]robbing "whoever was in the hallway." When asked if the person who was robbed was "the person that was making sure who goes in and if anybody was charged" to enter, Osouna answered "I would think so, yeah," "[w]ho else?" Osouna did not testify at trial.
During the prosecutor's opening statement, she referenced Osouna's confession, informing the jurors "you will hear the victim . . . robbed one of his people, so instead of calling the police, these two defendants decided that Donald Reed had to die and they meted out their own version of street justice." During summation, the prosecutor again referred to Osouna's confession, telling the jurors that "[Osouna] admitted that his cousin was the person who worked the door that night," and that Osouna "made the decision to . . . grab his sidekick bouncer who told him he got robbed, they went out together and they set upon, tactically, this victim by running and shooting before a word was said."
The jury convicted the defendant of murder in the second degree and criminal possession of a weapon in the second degree. The defendant appeals.
"A defendant's right of confrontation is violated where the confession of a nontestifying codefendant that facially incriminates the defendant is introduced at their joint trial" (People v Russo, 81 AD3d 666, 667; see Bruton v United States, 391 US 123, 135-137). "Bruton does not apply, and no violation of the Confrontation Clause exists, when the challenged statements are not incriminating on their face, but only become so when linked with other evidence introduced at trial" (People v Perry, 187 AD3d 796, 796). However, Bruton applies to statements that "'obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately'" (People v Johnson, 27 NY3d 60, 69, quoting Gray v Maryland, 523 US 185, 196).
Contrary to the People's contention, the admission of Osouna's confession was in violation of Bruton. Although Osouna did not specifically name the defendant as "the person who was making sure who goes in and if anybody was charged," and who was robbed by Donald shortly before the shooting, "the jury could easily have inferred" that the defendant was the person who was robbed (People v Russo, 81 AD3d at 667; see People v Cruz, 45 AD3d 1462, 1464). Indeed, the prosecutor encouraged that interpretation of Osouna's confession, informing the jury during opening statement that "you will hear the victim . . . robbed one of his people, so instead of calling the police, these two defendants decided that Donald Reed had to die and they meted out their own version of street justice" (emphasis added; see People v Singleton, 111 AD3d 769, 769-770; People v Pinto, 56 AD3d 956, 958). On summation, the prosecutor reinforced that Osouna's confession referred to the defendant, stating that "[Osouna] admitted that his cousin was the person who worked the door that night," and that Osouna "made the decision to . . . grab his sidekick bouncer who told him he got robbed, they went out together and they set upon, tactically, this victim by running and shooting before a word was said." Further, Osouna's confession supplied the only evidence of motive to shoot Donald, and linked that motive to the defendant as the individual who was robbed by Donald shortly before the shooting (see People v Johnson, 123 AD3d 573, 575-576, affd 27 NY3d 60; People v Dunbar, 104 AD3d 198, 215-216, affd 24 NY3d 304). Moreover, the Supreme Court failed to issue a limiting instruction that the confession should be considered only as evidence of guilt as to Osouna (see People v Casares, 187 AD3d 779). Thus, the admission of Osouna's confession was error. Nevertheless, under the particular circumstances of this case, the error was harmless in light of the overwhelming evidence of the defendant's guilt, including the identifications of the defendant by Shameek and by Strickland, and since there is no reasonable possibility that the improperly admitted confession contributed to the defendant's convictions (see People v Crimmins, 36 NY2d 230, 237; People v Martin, 58 AD3d 519; People v Blount, 193 AD2d 610, 611).
Contrary to the defendant's contention, the Supreme Court did not err in declining to issue an expanded identification charge (see People v Knight, 87 NY2d 873, 874-875; People v Vasquez, 253 AD2d 676; see also People v Bravo, 69 AD3d 870).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit.
BARROS, J.P., RIVERA, WOOTEN and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court